Joseph C. Hughes v. Fisher & Blackburn.

Partnership—Partnership Liability.

 Where A., a member of a partnership composed of A. and C., receives money from B. to be applied as B. may direct, it not being loaned to the partnership or to be used for partnership purposes, but was intended to be used in compromising B.'s debts, it does not become a partnership liability, although placed to the credit of B. on the partnership books and paid out with other firm moneys on partnership liabilities, but B. must look alone to A. for payment of the debt.

APPEAL FROM KENTON CIRCUIT COURT.

October 1, 1873.

Opinion by Judge Pryor:

The instruction to find for the defendant should have been given. It is well settled that when one partner borrows money for the use

of the firm, the firm is liable whether it is so applied or not, and equally as well understood that when one partner contracts with reference to any matter connected with the trade or business of the firm, for and in behalf of the firm, that the partnership is liable. This rule of responsibility can not, however, be made to apply to this case. Hughes and Hays were grocers and commission merchants in the city of Covington. Hughes, who furnished all the capital necessary to conduct the business, lived in an adjoining county and took no part in the management or control of this partnership enterprise, Hays agreeing in consideration of the capital advanced by Hughes, to devote his time and attention in conducting the establishment.

Hughes invested nearly twenty thousand dollars in this partnership and seems, after the dissolution and upon a settlement of the partnership interests, to have sustained considerable loss. Whilst this partnership was in existence Hays, the active member of the firm, executed to C. Blackburn this receipt: "Received, Covington, May 5, 1868, from C. Blackburn, five hundred dollars, to be applied as he may direct.

"HUGHES & HAYS."

This money was received by Hays, as the proof clearly shows, for the purpose of making some compromise with Blackburn's creditors, the latter having failed in business, by paying his indebtedness at twenty-five cents on the dollar. Hays received the money for this purpose and made an agreement to so apply it, of which his partner, Hughes, was in entire ignorance. After the dissolution of the partnership Blackburn applied to Hughes for payment and upon his declining to pay assigned the receipt on the 11th of November, 1871, to the appellee, Fisher, who prosecuted this action to recover the money.

The evidence shows that upon the execution of the receipt the money was placed to the credit of Blackburn on the books of Hughes & Hays and deposited in the Farmers bank to the credit of the firm and afterwards checked out with the other firm moneys to pay the firm liabilities. The amount as stated by the witness Hays, was never transferred to the firm as a loan. Nothing was said about interest and the only object he had in receiving it was to compromise and pay off Blackburn's debts, and the money was to be so applied. Blackburn says in his statement, that Hughes agreed

to pay interest on the money for the use of it by the firm, but that the money or its equivalent was to be used and paid by Hughes in compromising Blackburn's debts. Hughes was not present or cognizant of the arrangement between Hays and Blackburn, and Hays, under the agreement, seems to have compromised only one claim. The mode in which this receipt is executed shows that this money was not loaned to the firm, but deposited with Hays for the purpose of applying it to Blackburn's benefit in the payment of the latter's indebtedness. The entry made by Hays on the firm books of the money to the credit of Blackburn and the use of it by the firm does not make the firm the original debtor or borrower of the money upon the facts as shown in the record. In fact there is no pretense that there was any contract for the actual borrowing of the money, but it was placed in the hands of Hays for a specific purpose and entirely foreign to the business of this partnership enterprise. Blackburn had himself been a grocer. He knew the character of the business in which this firm was engaged, and it is evident that he was looking alone to the responsibility and friendly aid of Hughes in the disposition of this money. That the credit was seen or could have been seen by Hughes on the firm books does not effect the latter's liability. Hughes might have seen the credit and still been (as he certainly was) in utter ignorance of this outside agreement between Blackburn and his partner by which the latter had undertaken to pay off the debts of Blackburn, and that too, as Blackburn, assignee, now insists, out of the partnership assets. If this money was really partnership funds, what right had this partner to apply the money to the payment and compromise of Blackburn's debts without the consent of Hughes. It is true that if the money had been borrowed for the use of the firm and misapplied, the firm would have been liable whether all the partners were cognizant of the borrowing or not, but this rule can not apply where a deposit of money is made, even in the firm name, to be used by or for the benefit of the party making the deposit in matters unconnected with the firm business without the consent of the firm. If this money had been borrowed for the firm or upon a representation that the partners would be liable upon the principle of agency and the authority that one partner has to borrow money for the benefit of the firm, but it would be a singular and dangerous rule of law to make a firm liable where money has been

deposited, as in this case, and appropriated under an acquirement by one partner to the sole benefit of the depositor or even the party loaning it without the knowledge of the other partners, and not only unconnected with the firm business, but in such a manner where the private contract, if carried out, could result in no benefit to the partnership.

The fact that the firm may have obtained the benefit of the money, or that it was entered on the firm books will not be sufficient to change the partnership. The party loaning the money has full knowledge either of the bad faith of the partner agreeing so to use it, or that it is to be used for purposes entirely disconnected with the letigimate business of the firm, and in such case the solvency or insolvency of the partnership is immaterial, as it is not a partnership liability.

If the partner making the agreement has an interest in the partnership assets after the payment of debts, this undivided interest could be made liable by a proper proceeding. The appellee, upon the facts, must look to Hays and not Hughes for the payment of this debt.

The judgment of the court below is reversed and cause remanded with directions to award the appellant a new trial and for further proceedings consistent with this opinion.

*Steveson, Mayes, for appellant.*

*Carlisle, for appellee.*